# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| THE BEAUTY MEDSPA, INC. § | |
| § | |
| v. § | CIVIL ACTION NO. 3:20-CV-3395-S |
| § | |
| FPG THE POINT LP § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant FPG The Point LP's Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion") [ECF No. 38]. For the following reasons, the Court **GRANTS** the Motion.

### I.   BACKGROUND

Plaintiff The Beauty Clinic MedSpa, Inc. ("Plaintiff" or "Tenant") and Defendant FPG The Point LP ("Defendant" or "Landlord") entered into a lease ("Lease") for a ground-floor office suite in a building owned by Defendant and located in Irving, Texas ("Building").[1] 2d Am. Compl. [ECF No. 31] ¶¶ 4, 7b. Plaintiff leased the space to operate a spa and "beauty, health, and skin/body image improvement business." *Id.* ¶ 7b. Plaintiff claims that Defendant induced Plaintiff into signing the Lease by misrepresenting the availability of surface parking with convenient access to Plaintiff's suite. Plaintiff alleges that Defendant then prevented Plaintiff from successfully operating its business by failing to provide convenient surface parking and refusing to allow Plaintiff to display its customary advertising materials in the Building. *Id.* ¶¶ 7d-f, 8a, 12.

---

[1] The Court relies on the Lease, formally titled "Lease Agreement between FPG The Point, LP, as Landlord, and The Beauty Clinic MedSpa, Inc. as Tenant Dated June 1, 2017" and attached as Exhibit 1 to the Motion. The Lease is referred to in Plaintiff's Second Amended Complaint and is central to Plaintiff's claims. *See Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012) (a "district court may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim."); *see also* ECF No. 40 at 1-50.

Specifically, Plaintiff claims that Defendant "stated that convenient parking would not be [a] problem and that there were available parking spots in front of the building for visitors, so that customers could park in the close spots and walk into the [Building] and have easy access to Plaintiff's suite." *Id.* at ¶ 7b. Plaintiff also contends that "the overall impression of the layout of the premises," including Plaintiff's own observations that the previous tenant of the same suite had designated surface parking spaces, "constituted a representation as to how Plaintiff's business would operate out of the [B]uilding." *Id.* Ultimately, however, "Defendant did not create reserved parking spaces for Plaintiff's business in the outside surface parking for easy walk-in access similar to the reserved spaces that were made for the prior tenant in the same space that Plaintiff observed with Defendant before signing the lease." *Id.* ¶ 8a.

In the Lease itself, Defendant "reserve[d] the right to adopt, modify, and enforce reasonable rules and regulations governing the use of the Parking Area." Lease C-2. Exhibit G to the Lease specifically allocated to Plaintiff "a total of 8 parking access cards permitting Tenant to use up to 8 unreserved parking spaces" in a parking garage "on an unreserved, 'first-come, first-served' basis." *Id.* at G-1. Plaintiff had the option to pay an additional fee for reserved parking spaces in the garage. *Id.* If Defendant provided Plaintiff with fewer than eight parking access cards/spaces, Plaintiff was entitled to an abatement of the $50 monthly "parking rent" charged per access card "in full settlement of all claims that Tenant might otherwise have against Landlord because of Landlord's failure or inability to provide Tenant with such parking spaces." *Id.* Nothing in the Lease provided Plaintiff with any additional parking, but it did allow Plaintiff to "validate visitor parking by such method or methods as Landlord may approve." *Id.*

The Lease contained a merger clause, which provided that the Lease "supersedes all oral statements and prior writings" and that "no subsequent alteration, amendment, change or addition

2

to this Lease shall be binding unless in writing and signed by Landlord and Tenant." *Id.* at 22. Plaintiff also expressly "disclaim[ed] any reliance upon any and all representations, warranties or agreements not expressly set forth in this Lease." *Id.* Nonetheless, Plaintiff argues that it "justifiably relied upon representations that were in conflict with the written lease that was later presented," such that enforcing the merger clause would be "unfair and unjust." 2d Am. Compl. ¶ 9b.

Plaintiff further alleges that it "sought to market its products to potential customers within the [B]uilding as well as display its marketing materials prominently within its suite so as to allow customers to view additional products and services offered by Plaintiff." *Id.* ¶ 12. Defendant, however, did not allow Plaintiff "to display its usual advertising materials," which showed "bare midsections, legs of the body, or models in bikinis enjoying the benefits of Plaintiff's products and services," allegedly after other tenants were offended by them. *Id.* Plaintiff contends that Defendant "should have known that a body image improvement business would have to advertise for its services and the most common advertisement is pictures of the skin," and thus Defendant should not have prevented Plaintiff from displaying them. *Id.* According to Plaintiff, Defendant tacitly approved Plaintiff's advertisements when Defendant—after seeing them during a site visit to Plaintiff's previous location—failed to inform Plaintiff that similar advertisements would not be allowed in the Building. *Id.*

The Lease specifically provided that "Tenant shall not paint or install lighting or decorations, signs, window or door lettering, or advertising media of any type visible from the exterior of the [Building] without the prior written consent of Landlord, which consent may be withheld in Landlord's sole and absolute discretion." Lease 7. It also prohibited Plaintiff from making any alterations to the Building that could "affect (in the sole discretion of the Landlord)

3

the (1) exterior appearance of the [Building], (2) appearance of the [Building]'s common areas or elevator lobby areas, (3) quiet enjoyment of other tenants or occupants . . . ." *Id.* at 6.

Plaintiff contends that Defendant's failure to provide convenient surface parking and refusal to allow Plaintiff to display its customary advertising materials frustrated the purpose of the Lease and destroyed Plaintiff's business, forcing it to relocate. 2d. Am. Compl. ¶¶ 11d, 12-14. Plaintiff asserts claims for "common law fraud/fraudulent inducement/statutory fraud," "negligent misrepresentation and negligence," and breach of contract. *Id.* ¶¶ 15-27. Plaintiff also seeks a declaratory judgment, exemplary damages, and attorneys' fees. *Id.* ¶¶ 28-31. Defendant has asserted counterclaims for breach of contract and conversion. *See* Def's. Answer & Countercl. [ECF No. 6] at 18-19.

Defendant seeks to dismiss Plaintiff's Second Amended Original Complaint for failure to state a claim. To date, Plaintiff has neither responded to Defendant's Motion nor sought an extension of time in which to respond. When a plaintiff fails to defend or pursue a claim in response to a motion to dismiss, the claim is deemed abandoned. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding plaintiff abandoned claim by failing to defend claim in response to motion to dismiss). However, given that Defendant's motion is dispositive, the Court will consider the merits of the issues raised therein. *See Webb v. Morella*, 457 F. App'x 448, 452 n.4 (5th Cir. 2012) (district court improperly granted motion to dismiss solely based on party's failure to file a response in opposition).

## II.   LEGAL STANDARD

### a.   *Rule 12(b)(6)*

To defeat a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738,

4

742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### b. *Rule 9(b)*

When a complaint alleges fraud, the plaintiff must plead the elements of its claims with the heightened particularity required by Federal Rule of Civil Procedure Rule 9(b). *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 689 (5th Cir. 2020). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). In the Fifth Circuit, the Rule

5

9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Put simply, Rule 9(b) requires the "who, what, when, where, and how" of the fraud. *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

### III.     ANALYSIS

#### a.     *Fraud*

Plaintiff asserts three separate fraud-related claims: (1) fraudulent inducement, (2) common law fraud, and (3) statutory fraud relating to a real estate transaction under section 27.01 of the Texas Business and Commerce Code.

"Under Texas law, the elements of fraudulent inducement are: 'a misrepresentation; that defendant knew the representation was false and intended [to] induce plaintiff to enter into the contract through that misrepresentation; that plaintiff actually relied on the misrepresentation in entering into the contract; and that plaintiff's reliance led plaintiff to suffer an injury through entering into the contract.'" *Hoffman v. L & M Arts*, 838 F.3d 568, 576 (5th Cir. 2016) (quoting *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012) (alteration in original)). The elements for common law fraud are the same. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). And "[t]he elements of statutory fraud . . . are essentially identical to the elements of common law fraud except that section 27.01 does not require proof of knowledge or recklessness as a prerequisite to the recovery of actual damages." *Massey v. EMC Mortg. Corp.*, 546 F. App'x 477, 482 (5th Cir. 2013) (quoting *Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 867 (Tex. App. —Austin 2001, pet. denied).

6

Each of these fraud-related claims require Plaintiff to "prove justifiable reliance on the representations made by the defendant." *Prime Income Asset Mgmt., Inc. v. One Dallas Ctr. Assocs. L.P.*, No. 3:07-cv-1731-B, 2009 WL 10678644, at *5 (N.D. Tex. Feb. 18, 2009) (citing, inter alia, *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (fraud); *Haase v. Glazner*, 62 S.W.2d 795, 798 (Tex. 2001) (fraudulent inducement)), *aff'd*, 358 F. App'x 569 (5th Cir. 2009)); *see also Bykowicz v. Pulte Home Corp.*, 950 F.2d 1046, 1050 (5th Cir. 1992) (reliance for the purposes of Texas statutory fraud is the same as for common law fraud), *cert. denied*, 506 U.S. 822 (1992).

As an initial matter, Plaintiff has not alleged its fraud claims with particularity sufficient to survive Rule 9(b). Plaintiff does not allege any misrepresentations at all with respect to advertising. With respect to parking, Plaintiff has not alleged who made the alleged misrepresentations, what specifically those statements were, or when they were made. Instead, Plaintiff refers only to nondescript statements about the availability of convenient parking made by unnamed representatives of Defendant in the course of touring the Building. Such generalized allegations are insufficient to state a claim for fraud. *Massey*, 546 F. App'x at 481.

Even if Plaintiff's fraud claims could survive Rule 9(b) scrutiny, they nonetheless fail because Plaintiff cannot establish the element of justifiable reliance. "Texas courts have repeatedly held [that] a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms." *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424-25 (Tex. 2015); *accord JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 659-60 (Tex. 2018).

The Court agrees with Defendant that "[t]he Lease belies all of the purported misrepresentations regarding parking and advertising." Mot. 11. Plaintiff agreed to the detailed

7

provisions in the Lease regarding parking and advertising outlined above. Given these specific provisions, Plaintiff could not have reasonably expected different parking arrangements or to display marketing materials which Defendant did not approve. *See Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 501 (Tex. 2019) (plaintiff could not "justifiably rely on any statement that purported to change the parties' agreement" given the specificity of the written contract); *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 856, 858-59 (Tex.App.—Houston 2003 [14th Dist.], pet. denied) (reliance on both pre- and post-contractual oral representations, directly contradicted by express terms of a contract, is not justified as a matter of law); *BioSilk Spa, L.P. v. HG Shopping Ctrs., L.P.*, No. 14-06-00986-CV, 2008 WL 1991738, at *1-*3 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (tenant could not reasonably rely on verbal representations that the landlord would allow an exterior sign when the lease "specifically required [the tenant] to obtain [the landlord's] approval before posting any signs").

Moreover, a "merger clause is a clear statement of the parties' intent that no prior representations or agreements be relied upon." *Corporate Link, Inc. v. Fairbanks Capital Corp.*, No. 3:03-cv-0506, 2005 WL 770564, at *9 (N.D. Tex. April 4, 2005); *see also BioSilk Spa*, 2008 WL 1991738, at *3 (no oral modifications clause precluded reasonable reliance on alleged misrepresentations about displaying a sign). Likewise, a "clause that clearly and unequivocally expresses the party's intent to disclaim reliance on the specific misrepresentations at issue can preclude a fraudulent-inducement claim." *Int'l Bus. Mach. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 229 (Tex. 2019) (quoting *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60–61 (Tex. 2008)); *see also In re Capco Energy, Inc.*, 669 F.3d 274, 284 (5th Cir. 2012) ("Where the parties have signed a contract with a clause that expressly disclaims reliance on prior representations, such clause negates a fraudulent inducement claim."); *Italian Cowboy Partners, Ltd. v. Prudential Ins.*

8

*Co. of Am.*, 341 S.W.3d 323, 335 (Tex. 2011) (The "intent to disclaim reliance on others' representations" must be "evident from the language of the contract itself."). The Lease contains a merger clause, and Plaintiff clearly and expressly disclaimed reliance on all representations or agreements not specifically set forth in the Lease. This forecloses Plaintiff's fraud-based claims.

### b. *Negligent Misrepresentation*

To succeed on a negligent misrepresentation claim under Texas law, a plaintiff must show: "(1) a representation made by a defendant in the course of its business or in a transaction in which [they] ha[d] a pecuniary interest; (2) the representation conveyed false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffer[ed] pecuniary loss by justifiably relying on the representation." *Orca Assets G.P., LLC*, 546 S.W.3d at 653–54. "The primary difference between fraud and negligent misrepresentation is that a 'negligent misrepresentation claim does not require an actual intent to defraud, only that . . . the party making the false statement acted negligently in doing so.'" *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 474 (5th Cir. 2018) (citation and quotations omitted). However, the same requirement of justifiable reliance that applies to fraud claims applies to negligent representation. *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010).

Plaintiff's negligence claims fail for the same reasons expressed above, namely, that Plaintiff could not have justifiably relied on Defendant's purported misrepresentations. Moreover,

a disclaimer of reliance applies with equal force to negligent misrepresentation claims. *Garza v. CTX Mortg. Co., LLC*, 285 S.W.3d 919, 927 (Tex. App.—Dallas 2009, no pet.).[2]

### c.    *Breach of Contract*

In Texas, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Eagle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

Plaintiff has not alleged any facts showing that Defendant breached the Lease. The Lease did not require Defendant to provide any parking beyond eight parking passes to the garage, and the Lease specifically gave Defendant complete discretion over the display of marketing materials visible outside Plaintiff's suite.

### d.    *Declaratory Judgment*

Plaintiff also seeks a declaratory judgment "regarding what obligations, duties and liabilities Defendant has to Plaintiff . . . and whether Plaintiff is entitled to injunctive or equitable remedies" as well as damages. 2d. Am. Compl. ¶ 30. Because Plaintiff's request for declaratory judgment is predicated on claims that fail, its request for declaratory judgment fails as well. *Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 343 (5th Cir. 2012) (when a court dismisses all underlying substantive claims in a suit, any requests for injunctive relief necessarily fail); *see also Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (availability of declaratory judgment "presuppose[s] the existence of a judicially remediable right"); *Henley v. JP Morgan Chase Bank, Nat'l. Ass'n.*

---

[2] Defendant also contends that Plaintiff's fraud and negligence claims are barred by the economic loss rule. *See* Mot. 16. Because the Court concludes that Plaintiff has failed to state a claim for both fraud and negligence, the Court need not reach the question of whether such claims would be barred by the economic loss rule.

*for Deutsche Bank Nat'l. Tr. Co.*, No. 3:10-cv-1344-P, 2010 WL 11619016, at *4 (N.D. Tex. Dec. 22, 2010) (declining to grant declaratory relief when dismissing underlying claims).

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant FPG The Point LP's Motion to Dismiss Plaintiff's Second Amended Complaint. Plaintiff's Second Amended Original Complaint is **DISMISSED**. As Defendant's Counterclaim remains pending, the Court will not enter final judgment at this time.[3]

**SO ORDERED.**

SIGNED October 27, 2021.

**KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE**

---

[3] The Court will defer determination of Defendant's request that the Second Amended Complaint be dismissed with prejudice until entry of the final judgment.

11